UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

ZOLTAN BOKA,

                    Plaintiff,

    -against-

DR. VALERIE SHAFER, ET AL.,

                    Defendants.

----------------------------------------X

15 Civ. 6629

OPINION

A P P E A R A N C E S:

        Pro Se

        ZOLTAN BOKA
        3564 89TH Street, Apt. 4C
        Queens, NY 11372

        Attorneys for Defendants

        ERIC T. SCHNEIDERMAN
        Attorney General of the State of New York
        120 Broadway, 24th Floor
        New York, NY  10271
        By:  Christopher V. Coulston, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/13/16

**Sweet, D.J.**

Defendants City University of New York ("CUNY"); Katherine Raymond in her official and individual capacity; James B. Milliken in his official and individual capacity; Sharon Lerner in her official and individual capacity; Douglas Whalen in his official capacity; William Kelly in his official capacity; Matthew Schoengood in his official capacity; and Chase Robinson in his official capacity (the "Individual Defendants," and, with CUNY, the "Defendants") have moved pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the October 23, 2015 amended complaint (the "Amended Complaint") of plaintiff Zoltan Boka, <u>pro se</u> ("Boka" or the "Plaintiff"). The Plaintiff has moved for a stay, to convert the Defendants' motion for summary judgment, and for fees in connection with service. Based on the conclusions set forth below, the motion of the Defendants to dismiss the Amended Complaint is granted, and the motions of the Plaintiff for a stay, conversion to summary judgment and fees are denied.

## I. Prior Proceedings

Boka is a former doctoral student at the Graduate School and University Center of CUNY (the "Graduate Center"). In August 2012, Plaintiff was dismissed from the Speech-Language-Hearing Sciences ("SLHS") program after failing the "First Examination" the second time. See Am. Compl. ¶ 28 and Ex. 18. Under the Graduate Center's policies, failing the First Examination twice leads to immediate termination from the program. Id., Ex. 18. The Plaintiff unsuccessfully challenged this termination in an Article 78 proceeding, where he was represented by counsel. Zoltan Boka v The City University of New York. et al., Supreme Court, New York County, Index No. 101346/2013. There, the Court addressed many of the issues raised in Plaintiff's Amended Complaint, including whether Plaintiff had sought an accommodation specifically for his First Examination. See id., Ex. 26. The Court concluded that he had not.

Plaintiff's Complaint, filed August 21, 2015, alleges that he was not offered a reasonable accommodation to pass the First Examination and was wrongfully expelled from the SLHS program after requesting one and contains thirteen separate causes of the following federal and state common law claims. His Amended Complaint was filed October 23, 2015.

2

- Rehabilitation Act (Counts 1 and 2);
- U.S.C. § 1983 (Counts 3 and 4) brought against Defendants Marton and Lerner;
- Fraud under New York common law (Counts 5-8);
- 14th Amendment due process claims (Counts 9-11); and
- Breach of contract under New York common law (Counts 12-13).

Defendants include CUNY, as well as the following present and former CUNY employees: former Graduate Center President William Kelly; Graduate Center President Chase Robinson; CUNY Chancellor, James B. Milliken; Graduate Center professors, Dr. Valerie Shafer, Dr. Lorraine Obler, Dr. Douglas Whalen, and Dr. Klara Marton; CUNY counsel, Katherine Raymond; Director of Student Affairs at the Graduate Center, Sharon and Vice President for Student Affairs at the Graduate Center, Matthew Schoengood.

The Amended Complaint alleges the relationship of the parties. The Plaintiff enrolled in the SLHS Doctoral Program at the CUNY Graduate Center in 2008. Am. Compl., p. 2. A

requirement of the SLHS program is that each student is required to write a "First Examination," a paper proposing a research project that the student designs. Id., Ex. 25, ¶ 6. A student's academic advisor is permitted to give the student feedback on two drafts of the First Examination prior to submitting it. Id. The student may also resubmit the exam once if he or she does not receive a passing grade on the first submission. Id., ¶ 7. The SLHS Handbook states that "the first draft of the exam must be submitted to the student's advisor by January 31 of the student's second year. Then the 1st exam process must be finished by the end of that semester. Students may not continue in the program after completing 45 graduate credits if they have not passed the First Examination." Ver. Pet., Ex. 38, Ex. A to the Declaration of Christopher Coulston, dated January 29, 2016 ("Coulston Decl."). In April 2012, near the end of his third year as a student in the program, Defendant Marton informed Plaintiff that he would not be allowed to register for the Fall 2012 semester without submitting and passing his First Examination. Am. Compl., Ex. 25, ¶ 14. On May 8, 2012, Plaintiff submitted a First Examination research paper for evaluation, and received a failing grade. Id., ¶¶ 15-16. On July 2, 2012, after receiving written feedback from the three professors who reviewed his first attempt, Plaintiff submitted a revised Examination paper. Id., ¶ 16-17; Ver. Pet., ¶ 23. On August 17,

4

2012, Plaintiff was notified that he had received a failing grade on his resubmission of the First Examination. Ver. Pet., ¶ 38. On August 23, 2012, Plaintiff requested a leave of absence. Ver. Pet, ¶ 62. Under the SLHS program's policies, a student is only permitted to retake the exam one time, and on August 24, 2012, after receiving his request for a leave of absence, Defendant Marton informed Plaintiff that his matriculation in the program was terminated. Ver. Pet., Ex. 38; Am. Compl., Ex. 25, ¶ 22.

Plaintiff has alleged that the actual motivation for his termination was discrimination based on his disability and retaliation for his request for an accommodation. Plaintiff suffered a traumatic brain injury in infancy that has led to various neurological impairments. Am. Compl., p. 1. In February 2012, after having difficulties with a statistics examination, Defendant Lerner recommended that Plaintiff receive a neuropsychological evaluation to determine what accommodations might be appropriate for him. See Id., p. 2, Ex. 2 and 24, ¶¶ 9-11. On June 18, 2012, Defendant Lerner received a Neuropsychological Assessment prepared by Dr. Sarah Bronson. Id., p. 2, Exs. 2 and 3. The Assessment recommended three accommodations: 1) organizational assistance from professors with writing papers; 2) take home examinations in all courses;

and 3) a note taker. Id., Ex. 2. On July 5, 2012, three days
after re-submitting his First Examination, Plaintiff and
Defendant Lerner met to discuss Dr. Bronson's recommendations.
Id., p. 2, Ex. 24, ¶ 14. In her affirmation submitted in the
subsequent Article 78 proceeding, Defendant Lerner explained
that during this meeting she advised Plaintiff about how they
could implement these recommendations, particularly with respect
to writing assignments. Defendant Lerner stated in her
affirmation that she agreed to assist Plaintiff in locating a
writing coach and during discussions with his professors on
receiving additional feedback and reviewing model examples prior
to submitting his research papers. Id. Defendant Lerner stated
in her affirmation that these accommodations were prospective
accommodations for Plaintiff's next semester. Id., ¶ 15.


On October 2, 2013, following his termination from the
program, and after appealing his termination through the
Graduate Center's appeals process, Ver. Pet. ¶¶ 68-72, Plaintiff
commenced an Article 78 proceeding. In that proceeding,
Plaintiff alleged that he had been dismissed from the SLHS
program in violation of the ADA, the Rehabilitation Act, the New
York State Human Rights Law and the New York City Human Rights
Law. Ver. Pet., ¶ 1. As in this litigation, Plaintiff named
Defendants Robinson, Lerner, Marton, Kelly, and Schoengood as

Respondents. In the Article 78 proceeding, as here, Plaintiff alleged that Defendants had "ignor[ed] a request for reasonable accommodations" and retaliated against Plaintiff by terminating him from the SHLS Program after receiving his request for an accommodation. Ver. Pet., ¶¶ 73-75. Plaintiff also asserted that Defendants did not comply with the 2009-2010 student handbook - an allegation that appears again in Plaintiff's Thirteenth cause of action in this litigation. Ver. Pet. ¶ 76; Am. Compl. ¶ 159.

On April 1, 2014, a hearing was held before Judge Eileen Rakower to address Plaintiff's petition. Judge Rakower concluded that it was not arbitrary and capricious for CUNY to terminate Plaintiff from the program. Am. Compl., Ex. 26, 15:16-7. Judge Rakower explained that Plaintiff had never requested an accommodation for his First Examination (Id., 9:22-3) and that CUNY was fully prepared to accommodate him in the semester beginning in Fall 2012 (Id., 12:4-6). Plaintiff did not appeal this decision.

The instant motions were marked fully submitted on March 24, and May 19, 2016.

## II. Standard of Review

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)

A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The relevant inquiry on application for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. A court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. Westinghouse Elec. Corp. v. N.Y. City Transit Auth., 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990) (quoting Anderson, 477 U.S. at 249). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original).

8

Plaintiff's pro se status alters the interpretation of Plaintiff's submissions, but not the burdens of law on either party. Pro se submissions are held "to less stringent standards than formal pleadings drafter by lawyers" and must be read to "raise the strongest arguments they suggest." Olle v. Columbia Univ., 332 F. Supp. 2d 599, 607 (S.D.N.Y. 2004), aff'd, 136 F. App'x 383 (2d Cir. 2005) (citations omitted). In addition, "even when a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion," the burden remains on the defendant to demonstrate summary judgment is appropriate as a matter of law. Amaker v. Foley, 274 F.3d 677, 681 (2d Cir.2001); see also Vermont Teddy Bear, 373 F.3d at 244; Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 74 n. 1 (2d Cir. 2001); Booker v. Fed. Reserve Bank of New York, Nos. 01 Civ. 2290(DC) & 01 Civ. 2291(DC), 2003 WL 1213148, at *12 (S.D.N.Y. Mar. 17, 2003); Mattel, Inc. v. Pitt, 229 F.Supp.2d 315, 320 (S.D.N.Y. 2002).

However, proceeding pro se "does not otherwise relieve a litigant from the usual requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Cole v. Artuz, No. 93 Civ. 5981(WHP)(JCF), 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999) (quoting Carey v. Crescenzi, 923 F.2d

9

18, 21 (2d Cir. 1991)); see also Lee v. Coughlin, 902 F.Supp.
424, 429 (S.D.N.Y. 1995).

## III.   The Eleventh Amendment Bars Plaintiff's Common Law and Due Process Claims

The Eleventh Amendment bars claims against the State in
federal court unless the State has unequivocally consented to
suit or Congress has unequivocally and properly abrogated the
State's immunity from suit. Pennhurst State Sch. & Hosp. v.
Halderman, 465 U.S. 89, 99 (1984). This immunity extends to
entities considered "arms of the state," such as the senior
colleges of CUNY, see Clissuras v. City Univ. of N.Y., 359 F.3d
79, 82 (2d Cir. 2004) (citation and quotation marks omitted), as
well as the state officials working at those entities on behalf
of the State (i.e., in their official capacities). Pennhurst,
465 U.S. at 121-23.


"Where litigants accuse state officers of violating state
common law when acting in the course and scope of their
employment, the Eleventh Amendment prevents the litigant from
raising the claim in federal court whether the litigant seeks
damages or injunctive relief, and whether the litigant invokes
the court's original or pendent jurisdiction." Hughes v. Savell,
902 F.2d 376, 378 (5th Cir. 1990) (internal quotation marks and

10

citations omitted); see also Santiago v. N.Y. State Dep't of
Corr. Servs., 945 F.2d 25 (2d Cir. 1991) (holding that the
Eleventh Amendment bars suits brought directly pursuant to the
Fourteenth Amendment); Quern v. Jordan, 440 U.S. 332, 341-45
(1979) (holding that Congress did not abrogate state sovereign
immunity by enacting § 1983). "Neither CUNY nor the State of New
York has waived its immunity to suit in federal court," for
either state law claims or federal § 1983 claims. Miles v.
Baruch Coll., No. CV07-1214 CPS/RLM, 2008 WL 222299, at *3
(E.D.N.Y. Jan. 25, 2008); see also Jones v. Nat'l Comm. &
Surveillance Networks, 409 F. Supp. 2d 456, 467 (S.D.N.Y. 2006),
aff'd, 266 F. App'x 31 (2d Cir. 2008) (summary order);
Pennhurst, 465 U.S. at 121.

     Accordingly, Plaintiff's claims against CUNY and the
Individual Defendants in their official capacities for fraud
(causes of action five through eight) and breach of contract
(causes of action twelve through thirteen), as well as his due
process claims (causes of action three, four, nine, ten, and
eleven) are barred as a matter of law under Fed. R. Civ. P.
12(b)(1).

**IV. The Article 78 Proceeding Bars Plaintiff's Due Process
Claim**

Plaintiff's Third, Fourth, Ninth, Tenth and Eleventh causes

of action assert due process violations. See Am. Compl. ¶¶ 80-

100, 130-140. Plaintiff alleges that Defendants deprived him of

his legitimate property interest in his education without due

process by submitting false declarations during the Article 78

proceeding in violation of the 14th Amendment. See ¶¶ 82, 88,

137, 140.

The due process clause does not protect against all

deprivations of constitutionally protected interests; it only

protects those taken "without due process of law," i.e., notice

and an opportunity to be heard. Zinermon v. Burch, 494 U.S. 113,

125 (1990) (citation omitted). Under Article 78 of New York's

Civil Practice Law and Rules, Plaintiff had the opportunity to

have a hearing and the means to remedy his alleged deprivation

of due process. Giglio v. Dunn, 732 F.2d 1133, 1134 (2d Cir.

1984). The availability of an Article 78 proceeding alone, even

when Plaintiff fails to avail himself of it, satisfies the

"requisites of due process." Id. Here, Plaintiff pursued an

Article 78 hearing, was represented by counsel during the

proceeding, submitted a lengthy petition with dozens of

12

exhibits, and his petition was ultimately dismissed. See Am. Compl., p. 3, Ex. 26. Accordingly, the Third, Fourth, Ninth, Tenth and Eleventh causes of action are dismissed as a matter of law against all Defendants. Plaintiff concedes that the issues raised in his prior Article 78 proceeding and in this federal proceeding are identical and that those issues were resolved against him in his Article 78 case. Plaintiff argues, however, that issue preclusion based on a prior Article 78 determination simply does not apply to cases like his. See Pl.'s Opp. Mem. at 6. Plaintiff cites two cases in support of this argument. Id.

Plaintiff cites Davidson v. Capuano, 792 F.2d 275 (2d Cir. 1986), but that case concerns claim preclusion, not issue preclusion. Plaintiff also cites Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995), which concerns the preclusive effect of an Article 78 review of findings in an administrative prison disciplinary hearing. There, the Court stated in dicta that there was a question whether "collateral estoppel should ever apply to fact issues determined in a prison disciplinary hearing and reviewed for substantial evidence in an Article 78 proceeding, given the 'procedural laxity' of such prison hearings." Id. (internal citations omitted). Plaintiff interprets this to suggest that issue preclusion can never apply in a subsequent federal proceeding based on judicial

13

determinations in Article 78 proceedings. However, the Court in
Colon was only addressing this issue with respect to prison
hearings, and declined to resolve that issue anyway. Here,
Plaintiff is challenging the decision to terminate his
matriculation in a PhD program. He previously challenged that
determination in judicial proceedings brought before the New
York State Supreme Court pursuant to Article 78 during which he
had a full and fair opportunity to litigate that determination,
and he has pointed to no case law suggesting concerns over
"procedural laxity" in such proceedings.

## V.  Collateral Estoppel Bars Plaintiff's Accommodation and Retaliation Claim

Federal courts look to New York law to determine the
preclusive effect of a New York State Court judgment in a
subsequent federal action. Rameau v. N.Y.S. Dep't of Health, 741
F. Supp. 68, 70 (S.D.N.Y. 1990). "Under New York law, issue
preclusion precludes a party from relitigating an issue in a
subsequent action or proceeding an issue clearly raised in a
prior action or proceeding and decided against that party or
those in privity, whether or not the tribunals or causes of
action are the same." Latino Officers Assoc. v. City of N.Y.,
253 F. Supp. 2d 771, 783 (S.D.N.Y. 2003) (citing Ryan v. New

York Tel. Co., 62 N.Y.2d 494, 500 (1984)). This holds true for
Article 78 proceedings. Id. at 783-83.


In October 2013, Plaintiff initiated an Article 78
proceeding against CUNY and many of the same individual
defendants named in this action (Defendants Kelly, Robinson,
Lerner, Marton and Schoengood) and in his petition, Plaintiff
specifically alleged violations of the ADA and the
Rehabilitation Act based on a failure to accommodate and
retaliation. Plaintiff also alleged the same relevant facts in
his Article 78 Petition as he does here, claiming that he did
not receive an accommodation for the First Examination because
of the report of Dr. Sarah Bronson, who provided a
Neuropsychological Assessment of Plaintiff in June 2012. See
Ver. Pet., ¶¶ 19-28; Am. Compl., ¶¶ 39-79, Ex. 2.


Judge Rakower determined whether Plaintiff had ever
requested an accommodation for the First Examination. The Court
stated that "[Plaintiff] didn't ask for any accommodation with
regard to the first examination" prior to his dismissal. Am.
Compl., Ex. 26, 9:232-3. Indeed, Plaintiff's counsel
acknowledged on the record that "[i]t is true that here was no
such letter" requesting a specific accommodation for the First
Examination. Id., 10:4-5. While it is not explicitly stated in

15

Plaintiffs Amended Complaint, Plaintiff appears to suggest that

a February 2012 email from Sharon Lerner discussing

accommodations generally was a specific request for an

accommodation for the First Examination. See Am. Compl. ¶ 34.

That document was already before Judge Rakower in the Article 78

proceeding, Ver. Pet., Ex. 2, as was Dr. Bronson's report, id.,

Ex. 5, and many other documents that are now appended to the

Amended Complaint. See Ver. Pet., Exs. 11-16, 19, 25, 29). The

Article 78 Court stated that given the nature of the First

Examination, a project with virtually no time restraints, an

accommodation would have made no impact and nothing "would have

been different had there been more time to submit [the

Examination]." Am. Compl., Ex. 26, 15:21-3. Judge Rakower

concluded the request for an accommodation and the first and

second submissions of the First Examination were on "parallel

tracks." Id., 11:23-4. Plaintiff re-submitted his First

Examination on July 2, 2012 before meeting with Defendant Lerner

to discuss possible accommodations on July 5, 2012. See Ver.

Pet., ¶ 23; Am. Compl. ¶ 43.


Plaintiff also presented his theory to Judge Rakower

regarding the attribution of retaliatory motives to CUNY.

Plaintiff alleged in his petition that he was dismissed less

than two hours after submitting his request for an

accommodation, and that such a dismissal was an "illegal act of retaliation." Ver. Pet., ¶ 74-5. The Court pointed out that the submission of the report requesting specific accommodations was occurring on "parallel tracks" with the review of the First Examination. Am. Compl., 26, 11:23-4. Judge Rakower concluded that "[CUNY was] fully prepared to work with him once the new semester started" based on the suggestions of Dr. Bronson. Id., 12:5-6.

Plaintiff's Petition in the Article 78 Proceeding specifically alleged violations of the ADA and the Rehabilitation Act based on a failure to accommodate and retaliation, and those claims were clearly described in Plaintiff's petition, based on the same facts as those presented here. Plaintiff's § 1983, fraud and breach of contract claims seek to relitigate his request for an accommodation, even though Judge Rakower already has considered this evidence, and ruled in favor of Defendants. Plaintiff has already availed himself of the opportunity to litigate those issues, and is now collaterally estopped. Ver. Pet. ¶ 1; see Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 350, 712 N.E.2d 647 (1999).

Plaintiff also presented his theory that Defendants did not comply with the 2009-2010 Student Handbook in his Verified Petition, which now appears as the Thirteenth Cause of Action for breach of contract. Ver. Pet, ¶ 76. Judge Rakower rejected this allegation as well, stating there was no violation of the 2009 handbook and that claim should also be dismissed. Am. Compl., Ex. 26, 15:11-5.

Accordingly, all causes of action founded upon Plaintiffs alleged request for an accommodation for the First Examination are precluded by the prior Article 78 proceeding, and the First, Second, Third, Fifth, Sixth, Seventh, Eighth, Twelfth and Thirteenth causes of action are dismissed.

## VI.  **Plaintiff's Discrimination Claim Under the ADA or the Rehabilitation Act is Inadequately Alleged**

Plaintiff's claim under the ADA or Rehabilitation Act for failure to accommodate fails to state a plausible claim. To state a claim under either act, a plaintiff "must demonstrate (1) that she is a qualified individual with a disability; (2) that the defendants are subject to one of the Acts; and (3) that she was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise

18

discriminated against by defendants, by reason of her

disability." Harris v. Mills, 572 F.3d 66, 73-74 (2d Cir. 2009)

(noting that the standards for the ADA and the Rehabilitation

Act are generally equivalent) (citing Powell v. Nat'l Bd. of

Med. Examiners, 364 F.3d 79, 85 (2d Cir.), opinion corrected,

511 F.3d 238 (2d Cir. 2004)). Here, Plaintiff never asserts what

accommodation he would have needed to assist him in passing the

First Examination. Plaintiff fails to establish that he was

denied the opportunity to participate or benefit from

Defendants' services or programs by reason of his disability.

See Felix v. N.Y. City Transit Auth., 324 F.3d 102, 107 (2d Cir.

2003) ("The ADA mandates reasonable accommodation of people with

disabilities in order to put them on an even playing field with

the non-disabled; it does not authorize a preference for

disabled people generally.") The Plaintiff fails to plead the

third requirement for stating a claim for discrimination under

the ADA or Rehabilitation Act.


On June 1 2012, Petitioner provided Defendant Lerner with a

Neuropsychological Assessment conducted by psychologist Sarah L.

Bronson, which Plaintiff has attached as Exhibit 2 to his

Amended Complaint. The report provides three recommendations for

accommodations: 1) "organizational assistance from his

professors when producing written work;" 2) take home tests in

19

his statistics classes; and 3) assistance with taking notes. Am. Compl., Ex. 2 (Recommendations section). None of these potential accommodations would have assisted Plaintiff in passing the First Examination, which is a paper proposing a research project designed by the student. Am. Compl., Ex. 25, ¶ 6. A student is permitted feedback from a professor on two drafts of the First Examination paper before it is submitted, and a student may retake the examination once if he or she fails. Id., ¶ 7. Plaintiff, who had just completed his third year in the program at the time of his dismissal, had already had a number of years to work on his first examination. The Plaintiff sent a follow-up letter to Defendant Lerner discussing potential accommodations and again made no mention of seeking an accommodation for the First Examination. Am. Compl., Ex. 7. Instead, Plaintiff listed three specific suggestions of accommodations for statistics courses. Id. Plaintiff seems to acknowledge the lack of a request for an accommodation for his First Examination in his Amended Complaint by stating that "he asked for help to complete the required work that would lead to a Ph.D." Id., ¶ 49. Plaintiff had not spoken to Defendant Lerner when he re-submitted his First Examination, Ver. Pet., ¶ 23; Am. Compl. ¶ 43, and the only document attached to his Amended Complaint that mentions a potential accommodation for the First Examination is an email he sent on August 23, 2012 after

20

learning he had failed the First Examination on August 17,2012. Ver. Pet, ¶ 38; Am. Compl., Ex. 16.

As determined by Judge Rakower, and as is clear from the Verified Petition and the Amended Complaint and its exhibits, Plaintiff did not request an accommodation for the First Examination prior to his second failure, nor alleged what accommodation would have assisted him in passing the First Examination, which he had already submitted prior to discussing accommodations with Defendant Lerner. Accordingly, Plaintiff has failed to allege that CUNY failed to provide, or that he requested, a reasonable accommodation for the First Examination, and Plaintiff's first cause of action is dismissed on that basis.

## VII.  Plaintiff's Retaliation Claim Under the ADA or the Rehabilitation Act is Inadequately Alleged

To plead a retaliation claim under the ADA or the Rehabilitation Act, a plaintiff must allege that "(1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." Treglia

v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

Here, Plaintiff has not alleged that Defendants were aware of his request for an accommodation or that a causal connection exists between his request for an accommodation and his termination from the program. Plaintiff alleges in his Amended Complaint that Defendant Marton only became aware of the request for an accommodation on the day he was dismissed from the program - August 24, 2012 - when he alleges that he sent it to her. Am. Compl., p 67. Plaintiff also seems to allege that the decision to terminate him had nothing to do with the request for an accommodation, but was instead based on an alleged scheme by Defendants Shafer, Whalen, Marton and Obler, none of whom were alleged to be aware of any request for an accommodation until the actual termination to expel him from the program. Id., 55-64. But Plaintiff had failed the First Examination for the second time on August 17, 2012, id., Ex. 14, and he was notified of his failure on the same day. Id., Ex. 25, ¶ 19. Since Plaintiff had already failed the First Examination and was notified of it on August 17, 2012, there can be no causal link since he had already failed out of the program based on the program's policies, and was aware of his failure.

22

As alleged, Plaintiff has not indicated that Defendant Marton or any other decision maker was aware of his request for an accommodation, and even if they were, the request was made after Plaintiff had failed the First Examination. There is no causal connection between the request and the decision to terminate him from the program.

Accordingly, the Second cause of action is dismissed.

## VIII. Plaintiff's Fraud Claim is Inadequately Alleged

Plaintiffs Fifth, Sixth, Seventh and Eighth causes of action appear to assert a claim of fraud based on third party reliance. Plaintiff contends that Prestige Builder & Mgmt. LLC v. Safeco Ins. Co. of Am., 896 F. Supp. 2d 198 (E.D.N.Y. 2012) demonstrates that third party reliance is a recognized doctrine in New York common law. However, the question of whether third party reliance provides a basis for a fraud claim under New York law was recently certified to the New York Court of Appeals in Pasternack v. Lab. Corp. of Am. Holdings, 807 F.3d 14, 22-23 (2d Cir. 2015). The New York Court of Appeals has since answered in the negative: "[T]his Court has stated on a number of occasions that a fraud claim requires the plaintiff to have relied upon a misrepresentation by a defendant to his or her detriment. ...

23

We, therefore, decline to extend the reliance element of fraud to include a claim based on the reliance of a third party, rather than the plaintiff." Pasternack v. Lab. Corp. of Am. Holdings, No. 112, 2016 WL 3543713 (N.Y. June 30, 2016).

Even if Plaintiff were able to proceed based on third party reliance, Plaintiff must still show "a representation of material fact, falsity, scienter, reliance and injury." Id. at 22 (internal quotes and citations omitted). A claim for common law fraud under New York law must also satisfy the requirements of the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure. JBC Holdings NY, LLC v. Pakter, 931 F. Supp. 2d 514, 531 (S.D.N.Y. 2013). To meet the heightened pleading standard under Rule 9(b), a plaintiff must plead the elements of fraud with particularity. Id. at 532. Specifically, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. N.Y. 1993). Plaintiff must also allege a strong inference of fraudulent intent, which may be established either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong

24

circumstantial evidence of conscious misbehavior or recklessness." JBC Holdings, 931 F. Supp. 2d at 531 (internal quotes and citations omitted). Plaintiff has not met this standard.

Plaintiff has failed to allege why any statements made by the Defendants were false. Plaintiff's allegations of fraud are simply that he believes Defendant's Whalen, Lerner, Marton and Attorney General Steve Banks made misrepresentations during the Article 78 proceeding. Am. Compl. ¶ 104, 111, 118 and 126. The basis for this belief is not provided beyond his subjective belief that the referenced statements are false, and has not articulated why the statements were false.

For these reasons, the Fifth-Eighth causes of action are dismissed.

## IX. Plaintiff Fails To State Claims Against Individual Defendants Raymond, Milliken, Kelly, Schoengood And Robinson.

Plaintiff has failed to allege facts that would support any claims against Defendants Raymond, Milliken, Kelly, Schoengood, or Robinson in their individual or official capacities. Plaintiff alleges that "Defendants CUNY, Kelly, Lerner, Marton, Obler, Raymond, Schoengood, Shafer, and Whalen knew that

25

Plaintiff is learning disabled," Am. Compl. ¶ 7, but does not identify any acts by Defendant Raymond that were discriminatory or retaliatory in nature. Indeed, the only allegation in Plaintiff's retaliation cause of action is that Defendant Raymond spoke with Defendant Lerner about possible accommodations. See id., ¶ 72. Plaintiff then states, without any basis whatsoever, that Raymond "presumably advised Defendant Lerner to break the law." Id. The exhibit referenced by Plaintiff does not suggest any unlawful conduct by Defendant Raymond. It is not stated what advice she offered or how such advice was unlawful, and Plaintiff no specific allegations regarding this alleged conduct.

Defendant Miliken is only mentioned once in the entire Amended Complaint, where Plaintiff that he is the employer of Defendant Robinson, and Defendant Robinson is described as the employer of Defendants Lerner, Marton, Obler, Raymond, Schoengood, Shafer, and Whalen. Id., ¶ 8. While Defendant Milliken is the Chancellor of CUNY and Defendant Robinson is the President of the Graduate Center (although not at the time of the events described in the Amended Complaint), they are not the employers of any individual at the school, and there are no allegations that either of them was aware of any of the allegations in the Amended Complaint when they occurred.

26

Plaintiff attempts to implicate Defendants Kelly and
Schoengood through two documents. Plaintiff copied Defendant
Schoengood on an email to Defendant Lerner, three days after his
matriculation as a student was terminated, see Exs. 9 and 21,
and Plaintiff sent Defendant Kelly a letter regarding his
request for accommodation on August 14 ten days before his
termination. Ex. 8. But Plaintiff does not state how either
individual participated in the decision to terminate Plaintiff,
and there are no specific allegations that they did so.

For these reasons, all causes of action against Defendants
Raymond, Milliken, Kelly, Schoengood, and Robinson are
dismissed.

## X.   Plaintiff's Motion to Stay is Denied

No appropriate grounds for a stay having been presented,
the motion is denied.

27

**XI.  The Plaintiff's Motion for Conversion to Summary Judgment is Denied**

Defendants' citations to the exhibits to Plaintiff's attached exhibits is completely appropriate and consistent with Chambers v. Time Warner, 282 F.3d 147, 154(2nd Cir. 2002), cited by Plaintiff, which concerned a lower court's inappropriate review of extrinsic documents. There, the Second Circuit stated the well-established rule that "on a motion to dismiss, a court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" Id. at 153, quoting Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993). In Chambers the lower court reviewed documents that were outside the pleadings. Here, Defendants' motion to dismiss properly relies only on documents that were attached as exhibits and made part of the Amended Complaint, incorporated therein by reference, and/or court records of which the Court can take judicial notice. Accordingly, the Plaintiff's motion to convert Defendants' motion to dismiss to a motion for summary judgment is denied.

**XII.   The Plaintiff's Motion for Fees is Denied**

Plaintiff seeks reimbursement for the costs associated with attempts to serve Defendants before he provided service by mail. The docket entries for service by mail indicate that Plaintiff served the Individual Defendants by mail on February 21, 2016. ECF Nos. 31-38. Plaintiff seeks repayment for fees for service attempted prior to February 4, 2016, ECF Nos. 22-25, for service on February 9, 2016, ECF Nos. 41-43, and for service on January 12, 2016, ECF No. 44.

Federal Rule of Civil Procedure 4(d) prescribes a duty to individuals, corporations, and associations subject to service under Rule 4(e), (f), or (h) "to avoid unnecessary expenses of serving the summons." To trigger the duty, the plaintiff must provide notice of the pendant action and request waiver of service. Fed. R. Civ. P. 4(d)(1). "The notice and request must:

(A) be in writing and be addressed:
      (i) to the individual defendant; or
      (ii) for a defendant subject to service under Rule
      4(h), to an officer, a managing or general agent, or
      any other agent authorized by appointment or by law to
      receive service of process;
(B) name the court where the complaint was filed;
(C) be accompanied by a copy of the complaint, 2 copies of
the waiver form appended to this Rule 4, and a prepaid
means for returning the form;
(D) inform the defendant, using the form appended to this
Rule 4, of the consequences of waiving and not waiving
service;

29

(E) state the date when the request is sent;
(F) give the defendant a reasonable time of at least 30
days after the request was sent—or at least 60 days if sent
to the defendant outside any judicial district of the
United States—to return the waiver; and
(G) be sent by first-class mail or other reliable means.
Fed R. Civ. P. 4(d)(1)(A)-(G).

If a defendant located in the United States fails to return
a waiver request pursuant to Rule 4(d) absent good cause, the
Court is mandated to impose on the refusing defendant "expenses
later incurred in making service" and associated motion costs to
recover those expenses. Fed. R. Civ. P. 4(d)(2)(A).

In his letter requesting costs pursuant to Rule 4(d)(2),
Plaintiff fails to allege or demonstrate the notice and request
for waiver was provided pursuant to the strict requirements of
Rule 4(d)(1)(A)-(G). The request is therefore denied.

30

**XIII. Conclusion**

Based on the conclusions set forth above, Defendants'
motion to dismiss the Amended Complaint is granted, and the
motions of the Plaintiff for a stay, conversion to summary
judgment and fees are denied. This opinion terminates the above
entitled action in addition to ECF Nos. 9, 17, 28.

It is so ordered.

New York, NY
July | | , 2016

ROBERT W. SWEET
U.S.D.J.